IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MADIE E GAINOUS,

      Plaintiff,

v.                                        CASE NO. 1:09-cv-00002-MP-AK

MICHAEL J ASTRUE,

      Defendant.

_____/

# O R D E R

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act

(Act) for review of a final determination of the Commissioner of Social Security (Commissioner)

denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and

determinations of the Commissioner are supported by substantial evidence and the decision of

the Commissioner is affirmed.

## A.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on December 7, 2005, alleging a disability onset

date of May 31, 1996, because of back pain, vertigo and dizziness.  Plaintiff petitioned for a

hearing before an administrative law judge (ALJ), who conducted a hearing on December 13,

2007, and entered an unfavorable decision on May 3, 2008.  The Appeals Council denied

Plaintiff's request for review, thus making the decision of the ALJ the final decision of the

Commissioner.  This action followed.

**B.      FINDINGS OF THE ALJ**

Plaintiff's earnings ceased in 1996, and the last date she is insured for disability benefits is December 31, 2001.  The ALJ found that the medical evidence did not support a condition in 2001 that would preclude her from performing her past relevant work as a professor.  The medical record established recurring problems with dizziness, vertigo and headaches, which was thought to be Meniere's disease[1], but she never had the classical symptoms of this condition such as abnormal gait, oculomotor imbalance, nystagmus, and a positive ataxia battery, Romberg, sharpened Rombert and Quick's test.  (R. 23).  Treatment records during this time frequently found sinus conditions to be the source of the symptoms.  (R. 23).  Dr. Kaylie, who examined her more recently in 2006, found no hearing loss or sensitivity, or any vestibular system impairment, yet he gave an opinion that she was totally disabled even at a sedentary level because of fatigue and vertigo.  (R. 24).  Contrary to this opinion, the ALJ found the overwhelming evidence of record to support an ability to perform light work, work at a level she performed previously as a professor, and therefore, she is not disabled.

**C.      ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in rejecting the treating physician's opinion that she is unable to work because of peripheral vertigo which was present prior to her date last insured

---

[1]  Meniere's Disease is an abnormality of the inner ear causing vertigo, dizziness, and fluctuating hearing loss, associated with changing fluid volume in the inner ear, usually treated successfully by dietary changes and medication.  Sometimes surgical procedures will alleviate the most severe conditions and symptoms.  www.nidcd.nih.gov (National Institute on Deafness and Communication Disorders).

(DLI) of December 31, 2001.

The government responds that the opinion of Dr. Kylie, referenced by Plaintiff, was inconsistent with medical evidence during the relevant time period, in fact treatment notes just months after her DLI showed normal hearing, no problems with vertigo, and reports of improvement and normal function. The report Dr. Kylie wrote giving his opinion about her condition prior to her DLI was written seven years after the fact and was based on two examinations conducted in October and November 2006 during which no physical limitations were noted. Thus, the ALJ gave Dr. Kylie's opinion proper weight and articulated good cause for doing so.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations

omitted).  The court may not reweigh the evidence or substitute its judgment for that of the

Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if

substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815

F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is

contrary to the Commissioner's findings, where there is substantially supportive evidence of the

Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230

(11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact,

his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th

Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to

provide the reviewing court with an adequate basis for it to determine whether proper legal

principles have been observed requires reversal.  Id. (citations omitted).

    A disability is defined as an "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or

mental impairment must be so severe that claimant is not only unable to do his previous work,

"but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

    Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

    1.      Is the individual currently engaged in substantial gainful activity?

    2.      Does the individual have any severe impairment?

    3.      Does the individual have any severe impairments that meet or equal those listed

in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

## E.      SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Plaintiff was diagnosed with Meniere's disease in October 1996, with primary symptoms of dizziness and vertigo.  (R. 128).  She was treated with diuretics and diet and returned with flare ups in October 1997 (R. 128), and November 1998 (R. 126, 127) and October 1999.  (R. 124).  Examinations of her ears were normal in 1998 (R. 126), 2000 (R. 123), 2001 (R. 122, 120) and 2002.  (R. 118).  When Dr. Maitland began treating her at the balance disorders clinic in 2003, he was not convinced that she had Meniere's because testing results, typically present for this disease, were normal.  (R. 230).  Dr. Kaylie began treating her in 2006, for "probable mild

peripheral vertigo" and saw her twice (10/2006 and 11/2007) recommending balance therapy. (R. 310-313). Results of EMG were normal, as was balancing testing. However, Dr. Kaylie wrote on December 10, 2007, that her symptoms had been present since the 1990's and he believed she was completely disabled from her peripheral vertigo prior to 12/31/2001. (R. 306-307). A consultative examination on January 24, 2006, by Dr. Wayne Simpson found her to have full range of motion and a normal gait, and diagnosed her based on past history with Meniere's disease, persistent disequilibrium, chronic low back pain and glaucoma. (R. 292-296).

## F.    SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff was represented by counsel at the hearing who proffered that she had been unable to work as a professor since 1996 because of fatigue, vertigo and low back pain. (R. 319). Because of a lack of evidence around the time when her insured status expired, counsel had Dr. Kaylie review the records and make an opinion about her condition in 2001. (R. 320).

Plaintiff testified that she has a PhD. She describes her condition as beginning in 1996 with dizziness and spinning every day. (R. 321). She was not hospitalized with this condition and was treated with medication. (R. 321-322). Her typical daily activities in 2001 were to get up and microwave her breakfast, which had been prepared by her husband, and on a bad day she would crawl from room to room or use the wall to steady herself throughout the house. (R. 322). She typically had 3 or 4 bad days a month and would be in bed for 3 or 4 days after "an attack." (R. 323). Every day she struggled with balance, but she drove herself to doctor's appointments and had no restriction on her license. (R. 323). Her back pain was associated with the vertigo and she had physical therapy, epidural shots and TENS units prescribed. (R. 324). She never

had surgery or used a walking assistance device. (R. 324). She came to Gainesville from Tallahassee to be part of a study on Meniere's patients and was told here that she did not have Meniere's and she is now being treated by Dr. Kaylie for labyrinthitis, poorly compensate balance, with "coping techniques" and medication. (R. 325). Her condition is worse today because she has had surgery on her eyelids which allows more light and more vision and this has affected her balance. (R. 326). Her complaints of fatigue have been the result of the inner ear disorder because her muscles are constantly engaged compensating for the balancing problems. (R. 327). She waited from 1996, when she last worked, to file for disability in 2005 because she thought she would get better and be able to resume her career, although Dr. Maitland told her that her condition would end her career. (R. 328).

## G.    DISCUSSION

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards

v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582

(11th Cir. 1987)).  If an ALJ rejects a treating physician's opinion, he must give explicit,

adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted

as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury

v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

In the present case, the ALJ explained that while he found Dr. Kaylie's opinion of

disability, expressed in his report dated December 10, 2007, to be "probative," he found that it

reflected more accurately her current condition and not her condition in 2001.  (R. 25).  As the

ALJ noted, Dr. Kaylie's opinion letter in 2007, which found her to be totally disabled, was not

supported by his own treatment notes, and was made years after the time in question.

Consequently, it was properly discounted and the medical evidence as a whole considered and

found to support her ability to work at a light level at which her previous work was performed.

Medical evidence around 2001, was inconclusive regarding Meniere's disease and her symptoms

of disequilibrium were often associated with diagnoses of sinus infection, allergies, and otitis

media.  These conditions do not support her self-described limitations of that time where she

reported that she could not sit upright and had to hold onto the walls of her home or crawl

through it to get around.  Further, MRI results of her back in 2005 show mild stenosis and small

herniations which are conditions which could be expected to produce some degree of pain and

limitation, but not to the level of severity described by Plaintiff.  Finally, Plaintiff claims that her

condition has worsened since 2001, but she has taken on caretaking responsibilities for her

mother indicating more activities than previously.

Plaintiff's past relevant work as a professor entailed walking up to 2 ½ hours, standing 5

½ hours, sitting 3 hours, no more than occasional climbing, stooping, crouching, and repetitive handling, grasping, grabbing, writing, typing and handling, and lifting only 10 pounds or less frequently and 20 pounds occasionally.  Her residual functional capacity in 2001 did not preclude her from performing her past relevant work, and she was therefore not disabled at that time.   Accordingly, it is

**ORDERED AND ADJUDGED:**

That the decision of the Commissioner denying benefits be AFFIRMED.

**DONE AND ORDERED** this  *18th*   day of March, 2010

_____*s/Maurice M. Paul*_____
Maurice M. Paul, Senior District Judge